MARY L. DAY, Respondent, _v._ JOSEPH A. JAMESON _et al._, Appellants.

_Court of Appeals, October 7, 1890._

Reversing 55 Supr. 567.

1. _Witnesses. Credibility._—The testimony of a party to an action, even though uncontroverted by any evidence on the part of the adverse party, presents only a question of fact which must be deemed, on review in the court of appeals, to have been conclusively disposed of in the court below. His relation to the action is such as to present the question of his credibility for the consideration of the jury or trial court.

2. *Brokers. stocks.*—A customer, who directs brokers to buy and sell stock, is not chargeable with a price which the stock may have had prior to the time the order was given, or greater than it then had, unless she consented to adopt such greater price of a prior purchase by the brokers. The mere fact that at the time of the creation of the agency, they had on hand stock which they had previously purchased, did not permit them to hand over the certificates of it in execution of the order at the price they paid for it, if that was greater than the price at the time the order was given.

3. *Same.*—The brokers may adopt and are chargeable with the price for which they actually sold the stock, in case they exercised good faith and reasonable skill in selling it.

4. *Same.*—Where there is no evidence to warrant the inference that the sale of the stock was not actually or in bad faith, made by the brokers at the price entered in the account with their customer, it is error to submit this question to the jury.

Appeal from a judgment of the general term of the superior court of the city of New York, affirming a judgment entered upon a verdict, and an order denying a motion for a new trial.

*Henry A. Root* and *Thaddeus D. Kenneson,* for appellants.

*Daniel P. Hays* and *Lucas L. Van Allen,* for respondent.

BRADLEY, J.—The times when the credits were given by the defendants to the plaintiff for money deposited and for the proceeds of the sale for her of the Metropolitan Elevated Railroad stock, and their amounts, were not, nor were the amounts drawn upon her checks, questioned. The controversy had relation to transactions by way of speculation in stocks by the plaintiff's husband through the defendants, and to the amount of loss with which the plaintiff was chargeable on account of the purchase and sale by them for her of 500 shares of Robinson mining stock. The defendants, or some of them, were members of the Stock Exchange, and the plaintiff's husband assumed on her account to deal in stocks through the defendants, who upon his orders purchased and sold them, charging and crediting the same to

7

the plaintiff's account. These transactions, commencing in November, 1880, continued until into February, 1882, when, as represented by the plaintiff's account upon the defendants' books, there was a balance against her of upwards of $2,000. The plaintiff's attention was first called to this fact in February, 1882, when she at once repudiated the transactions by her husband as wholly without authority from her. The defendants gave evidence tending to prove that at an interview of the plaintiff with them in March, 1881, she authorized the defendants to act upon the orders of her husband. This was distinctly contradicted by evidence on the part of the plaintiff. And the jury having found in her favor upon that question of fact, it must upon this review be assumed that those stock speculations of the husband were without her authority, and that she was not chargeable with them or their results. The plaintiff, however, did send by her husband to the defendants an order to purchase for her 500 shares of the Robinson mining stock, the certificate for which they delivered to her, and by her direction they afterwards sold this stock. From the transaction resulted a loss, the amount of which, or that with which the plaintiff was properly chargeable, was a matter of controversy on the trial.

The defendants claim that they made the purchase upon her order October 29, 1881, at $13\frac{3}{4}$, and the above sale November 29, 1881, at $5\frac{5}{8}$, resulting in a loss of $4,062.50, while on the part of the plaintiff it is claimed that the order for the purchase of the stock was not given until November 8th or 9th, when the price of the stock was $9\frac{3}{4}$; and that when the sale was ordered it may have been made for $8\frac{1}{8}$. Assuming that the witnesses and their evidence were credible, the weight of the evidence was decidedly in support of the contention of the defendants upon the question of the times of the purchase and sale, and of the price paid and received for the stock. But the burden was with the defendants to furnish evidence to reduce the amount of the balance of the

plaintiff's account below that produced by the deposits she had made and the drafts drawn by her upon it. The burden rested upon them to prove the prices paid and received for the Robinson stock. This they sought to do by the evidence of one of the defendants. His relation to the action was such as to present the question of his credibility for the consideration of the jury. No evidence was given as to the prices for which Robinson mining stock was selling in the market other than what appeared in his testimony and as represented by the defendants' account of purchases and sales by them. This evidence uncontroverted by any on the part of the plaintiff would have presented only a question of fact which here must be deemed to have been conclusively disposed of in the court below. Dean *v.* Van Nostrand, 23 N. Y. Wk. Dig. 97. There was some evidence tending to prove that the plaintiff's order to the defendants was later than October 29th, and that they did not in execution of it purchase the stock on that day or in that month. And the defendants' account represented as of date October 31st, stock as purchased for 13¾ and on November 9th for 9¾, and sales on 23d November for 8⅓ and on 30th for 5⅝. The plaintiff was not chargeable with a price which the stock may have had prior to the time the order was given by her and greater than it then had, unless she consented to adopt such greater price of a prior purchase by the defendants. The mere delivery upon the plaintiff's order of certificates of stock previously purchased by them would not have that effect. In view of all the evidence on the subject, there was no error in the refusal of the court to charge, as requested, that the defendants were entitled to a credit of the difference between 13¾ as the price paid and 5⅝ as the price received for the 500 shares of the Robinson stock. And the same may be said of the exception by the defendant's counsel to the "ruling about the mode of determining the value of the allowance on Robinson stock, that if the order was not given by her until the 9th November, she is not responsible for the pre-

vious purchase." This was not well taken. The court had upon that subject charged the jury to the effect that if the plaintiff had given the order to the defendants to purchase the Robinson stock in October when they purchased it, which they say they did for 13¾, she was chargeable, with the price they paid for it, but that if, as she said, she did not until November 8th authorize her husband to give the order, she was chargeable with the price of the stock then and not as of the time prior to the order when the defendants claim to have purchased it. That is to say, the plaintiff may be deemed to have taken the stock from the defendants in reference to the price at the time the order was given or at the time of its execution by purchase, unless something appears to the contrary. The mere fact that at the time of the creation of the agency the defendants had on hand stock which they had previously purchased, did not permit them to hand over to the plaintiff certificates of it in execution of the order at the price they had paid for it, if that was greater than the price at the time the order was given. This was the proposition of the charge to which the exception was taken. There may have been some vagueness in the evidence, on the part of the plaintiff, as to the time of giving the order to make the purchase, and there is some difficulty in reconciling all of it, as it appears by the record, with the fact that the order was given as late as November 8th, but it is not seen how that can now aid the exceptions before referred to. There was some evidence tending to prove that fact, and the court without criticism assumed in the charge to the jury that the evidence on the part of the plaintiff was that the order was not given until November 8th or 9th ; and upon that assumption, unchallenged by any exception or otherwise, submitted the case to the jury. If there was in this any mistake on the part of the court then was the time to seek its correction or to distinctly raise the question by exception.

The defendants' counsel also excepted " to the proposition

that unless the order for the purchase of the Robinson stock was given on the 9th November, they are to be credited with the price of the actual sale, that is in reference to the price they are to be credited with the price of the actual sale only under the circumstances stated by your honor." This is the language of the exception ; and while it is not as precise as it might have been, the exception evidently had reference to the portion of the charge relating to the determination to be made of the amount of loss chargeable to the plaintiff upon the Robinson stock. The court having referred to the plaintiff's claim that her loss was $875, in view of the price of it at the time the order was given, and that for which it could have been sold when direction was given to sell it, proceeded to charge to the effect that the evidence of the defendants was that the stock was sold for 5⅝ and assuming that it could have been purchased on November 8th or 9th, the date which the plaintiff says the order was given, at 9¾, the loss would be about $2,000 ; that if the stock was sold at 5⅝, the plaintiff would be responsible for the amount of the difference between that and the cost price, and if the order was given in October, as claimed by the defendants, the difference would be between that price and 13¾. The court qualified this by further charging the jury that the defendants were entitled to have adopted the price for which they actually sold the stock, assuming that they exercised good faith and reasonable skill in selling it. That if it was actually sold in good faith for 5⅝, they were entitled to have that taken as the price, but if it was not sold at 5⅝ and in good faith, and it could have been sold after and on the same day they got the order to sell it as claimed by counsel, they were entitled to a credit of $875 for the loss.

The circumstances within the charge and to which the exception pointed were those which permitted the jury to depart from the price for which the sale was actually made, assuming the stock was sold by the defendants. The effect

of it was that the price of the sale was not to conclude the jury if they found that the sale was not made in good faith for $5\frac{5}{8}$ and it could have been made by them after and on the same day the order to sell was given for a greater price, and the court submitted to the jury the question as to the amount of credit to which the defendants were entitled for loss upon the stock. This was all properly charged if there was any evidence permitting the conclusion that the defendants did not make the sale in good faith. While the burden was upon them to prove that they made the sale, to show the price for which it was sold, and it was their duty to act in good faith and use due diligence in making the sale with a view to realize the greatest price practicable for it, when the fact was established that they did sell the stock for a specified price, there was no opportunity to infer that they acted otherwise than in good faith in making the sale without some proof tending to support the fact. If it had appeared that the stock may at the time of the sale have been sold for a price greater than that for which the sale was made, that it was sold below the market price, the inference of want of proper diligence or of good faith may have arisen. But no evidence appears in the record to support such imputation. It quite clearly appears that the sale was not made before November 29th, and for the purpose of its sale or delivery the certificates of the stock were returned by the plaintiff to the defendants on the 30th. The entry in defendants' account under date November 28th represents a sale for $8\frac{5}{8}$, November 30th $5\frac{5}{8}$, December 1st $4\frac{5}{8}$. No entry of sale appears under date November 29th.

There is evidence tending to prove that entries in the account were of dates following those of the sales and representing the time of the delivery of certificates of stock previously sold. The price of this mining stock, as represented by the defendants' account, rapidly declined in the latter part of November. Assuming that the sale of the stock in question was made by the defendants for five and five-eighths,

there was no evidence to warrant the inference that it was made by them in bad faith for that price ; and, therefore, it was error to submit that question to the jury. The exception evidently was directed to this portion of the charge and sufficiently called the attention of the court to it to render it available to raise the question. The error in the charge had no relation to the purchase of the stock. And the only prejudice resulting from it which can be asserted in behalf of the defendants would be overcome by the allowance to them of the difference between nine and three-quarters as the purchase price of the stock and five and five-eighths as that for which it was sold, amounting to $2,062.50. They were, by the verdict, allowed $875 of that amount for the loss on the stock.

Whatever may be said about the propriety of doing so at that stage of the trial, there was no error in striking out, when the defense first rested, the evidence of the purchase and sale of some Manhattan stock by the defendants upon the order of the plaintiff's husband and of such orders given prior to March 12, 1881, as there was then no evidence tending to prove any authority in the husband prior to that time to represent her in speculative transactions. Nor were the defendants prejudiced by the granting of the motion at that time so far as it was granted.

It seems that the plaintiff had an interview with the defendant Jameson in February, 1882, shortly after the discovery by her of the transactions before referred to of her husband with the defendants and by them charged to her account, and at that time a writing which had been drawn up was presented to that defendant, who, on his cross-examination by the plaintiff's counsel, was asked whether that paper did not contain an agreement to repay this money to Mrs. Day? And to the ruling to receive the evidence exception was taken on the ground that the question called for the contents of the paper. It was left with the defendant at that interview. The paper was signed by no party, could

serve no purpose, and there was no reason for its preservation. About four years had elapsed after this occurrence. There was no presumption that it could have been produced by the. defendants, but rather the contrary. Chrysler v. Renois, 43 N. Y. 209. But however that may be, the witness did not give any evidence of its contents, but testified that he could not, and that which he did testify to on the subject must be deemed to have related to what was said between him and the plaintiff and her son, who was then present. In any view which may be taken of the ruling when made, there was no error in it to the prejudice of the defendants.

No other question requires consideration.

The judgment should be reversed and a new trial granted, costs to abide the event, unless the plaintiff stipulate to deduct from the judgment $1,187.50, with interest from August 22, 1882, and in that event the judgment be so reduced, and as so modified affirmed, without costs in this court to either party.

FOLLETT, Ch. J.—(dissenting).—The court instructed the jury : " If you believe that the order to sell was given on the 8th or 9th of November, as she and her husband testified, then they are entitled to take it at the price at that date and to allow what the stock was sold for, if it was actually sold in good faith for 5⅝ ; if not sold at 5⅝ and in good faith, but from the evidence here you can find that it could not have been sold after they gave the order to sell it in the same day, as counsel claimed, then they would be entitled to the credit of $875."

Among other exceptions taken to the charge is the following : " I except to the proposition that unless the order for the purchase of the Robinson stock was given on the 9th, they are to be credited with the price of the actual sale ; that is, in reference to the price they are to be credited on the sale, that they are to be credited with the price of the

actual sale only under the circumstances stated by your honor."

I quite agree that there is no issue raised by the pleadings or by the evidence as to the good faith of the defendants in making the purchase and sale; but I do not think the exception quoted sufficiently called the attention of the learned trial judge to the question now raised so as to make it available in this court. Had the remark quoted impressed the learned counsel for defendants with the idea that the court intended to impute bad faith to his clients, or to submit the question of their good faith to the jury, the attention of the judge would have been called to the observation and to the fact that no such issue was raised by the pleadings or evidence.

I am unable to concur in the conclusion that this remark misled the jury, or that the exception sufficiently called the attention of the trial court to the error now complained of.

I think the judgment should be affirmed, with costs.

Judgment reversed and new trial granted unless plaintiff stipulates to deduct from the judgment $1,187.50 with interest from August 22, 1882, and in that event the judgment be so reduced and as so modified affirmed, without costs.

All concur, except FOLLETT, Ch. J., who reads dissenting opinion.